IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Luis Aguilera, | ) |
|                Plaintiff, | ) |
|     v. | ) No. 11 C 9241 |
| Chicago Public Schools of the Board of Education of the City of Chicago, | ) Judge Virginia M. Kendall |
|              Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Luis Aguilera filed a complaint against the Board of Education of the City of Chicago ("the Board"), alleging that his termination was in retaliation for speech protected by the First Amendment and violated the Due Process Clause of the Fourteenth Amendment. Aguilera worked as a high school Spanish teacher at the Bronzeville Scholastic High School operated by the Board. The Board moved for summary judgment and to strike Aguilera's response to its motion as untimely filed and violated Local Rule 56.1.

The Court denies the Board's motion to strike Aguilera's response but nonetheless grants its motion for summary judgment.

## FACTS

The facts in this section are undisputed unless otherwise noted.

On August 2, 2007, the Board hired Aguilera as a Probationary Appointed Teacher at Bronzeville. (Def. 56.1 St. ¶ 12; Pl. 56.1 Resp. ¶ 12). This position was not tenured. (Def. 56.1 ¶ 1; Pl. 56.1 Resp. ¶ 1). The Board's Employee Discipline and Due Process Policy governed the

terms of Aguilera's employment. (Def. 56.1 St. ¶ 7; Pl. 56.1 Resp. ¶ 7). That Policy was explicitly not a contract. (Dkt. No. 49 Ex. D at 5).

In April 2000, Aguilera published a book entitled *Gabriel's Fire*. (Def. 56.1 ¶ 39; Pl. 56.1 Resp. ¶ 39). The book is autobiographical. In part, it tells the story of a romantic affair between Aguilera and a teacher at his high school. (Def. 56.1 St. ¶ 40; Pl. 56.1 Resp. ¶ 40). At the time of the affair, Aguilera was thirteen and the teacher was twenty-six years old. (*Id.*). Aguilera was not an employee of the Board at the time he wrote *Gabriel's Fire*. Aguilera informed the Board about the book during the application process with the Board. He referenced the book on his resume when he applied to Bronzeville and discussed the book with Bronzeville's principal during his job interview. (Pl. 56.1 St. ¶¶ 27-28; Def. 56.1 Resp.¶¶ 27-28). The book found its way into Bronzeville's library, though the parties dispute whether Aguilera had a role in placing the book there. (Pl. 56.1 ¶ 29; Def. 56.1 Resp. ¶ 29).

On January 20, 2009, Bronzeville received a complaint from the mother of one of Aguilera's female students. (Def. 56.1 ¶ 12; Pl. 56.1 Resp ¶ 12). The mother was concerned that Aguilera had, among other things, engaged in inappropriate conversation with her daughter, invited the daughter to lunch, and given gifts to the daughter. (Def. 56.1 ¶ 12; Pl. 56.1 Resp. ¶ 12). The Board initiated an investigation into the complaint. The Board assigned Investigator Louis Mahaffey to the case on January 26, 2009. (Pl. 56.1 ¶ 1; Def. 56.1 Resp. ¶ 1). Mahaffey spoke with the student in question. (Pl. 56.1 St. ¶ 5; Def. 56.1 Resp. ¶ 5). An investigator also spoke with Aguilera. (Pl. 56.1 ¶ 76; Def. 56.1 ¶ 18). At the end of the investigation, Mahaffey determined that Aguilera had invited the student in question to lunch at least eight times, walked the student to the bus, gave the student gifts, sent the student text messages, including one that read "Buenas noches, Princesa." (Pl. 56.1 St. ¶¶ 13-17; Def. 56.1 Resp. ¶¶ 13-17; *see also* Def.

56.1 ¶ 19). Mahaffey also found that Aguilera encouraged the student to read his book, *Gabriel's Fire*. (Pl. 56.1 St. ¶ 18; Def. 56.1 Resp. ¶ 18). Aguilera thought the concerns about his behavior were "ridiculous, absurd on so many levels." (Def. 56.1 ¶ 22; Pl. 56.1 Resp. ¶ 22). In what Aguilera claims was a joke about her parent's and the Board's unwarranted concern, he commented to the student "What are they thinking that I'm going to ask you to marry me or something?" (Def. 56.1 ¶ 23; Pl. 56.1 Resp. ¶ 23). Mahaffey included these findings in an investigation memorandum that he prepared. Aguilera does not dispute that he spoke with the student about the book (Pl. 56.1 ¶ 33), joked about marriage (*Id.* ¶ 39), walked the student to the bus stop (*Id.* ¶ 42), offered to let the student sit in his car (*Id.* ¶ 60) gave gifts to students (*Id.* ¶ 53), and exchanged text messages with the student (*Id.* at 57). Aguilera denies that any of these actions was improper.

Following the investigation, the Board held a hearing to consider whether it would terminate Aguilera's employment on October 2, 2009. (Def. 56.1 ¶ 28; Pl. 56.1 ¶ 90). Prior to the hearing, the Board sent Aguilera a letter describing the nature of the allegations that the student's mother had made against him. (Def. 56.1 28; Pl. 56.1 Resp. ¶ 28). Aguilera did not receive a copy of Mahaffey's investigation memorandum prior to the meeting. (Pl. 56.1 ¶ 90; Def. 56.1 Resp. ¶ 90). Aguilera attended the hearing. (Def. 56.1 ¶ 29; Pl. 56.1 ¶ 90). Aguilera presented evidence at the hearing, though he argues that the fact that he did not receive the investigation memorandum precluded him from presenting a full defense. (Def. 56.1 ¶ 29; Pl. 56.1 ¶ 91). A representative from Aguilera's union was present at the hearing and made a statement on his behalf. (Def. 56.1 ¶ 29; Pl. 56.1 Resp. ¶ 29). Following the hearing, the Board officer presiding over the hearing created a Recommendation for Termination Memorandum. (Def. 56.1 ¶ 30; Pl. 56.1 Resp. ¶ 30).

Relying on the October 2 hearing, the assistant director for the Board's Office of Employee Engagement recommended to the Board's Chief Executive Officer that the Board terminate Aguilera's employment. (Def. 56.1 ¶¶ 31-33; Pl. 56.1 Resp. ¶¶ 31-33). The Chief Executive Officer recommended termination to the full Board on November 12, 2009 and informed Aguilera of his recommendation. (Def. 56.1 ¶ 10; Pl. Resp. ¶ 10). The Board adopted the recommendation and terminated Aguilera's employment on December 16, 2009. (*Id.*).

## **LEGAL STANDARD**

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Thayer v. Chiczewski*¸705 F.3d 237, 246 (7th Cir. 2012). In order to survive summary judgment, the nonmoving party must set forth facts that show there is a genuine issue of material fact for trial "such that a reasonable jury could return a verdict in her favor." *Cincinnati Life Ins. v. Beyrer*, 722 F.3d 939, 951 (7th Cir. 2013); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). For the purpose of summary judgment, the Court views all facts in the light most favorable to the nonmoving party. *Fitzgerald v. Santoro*, 707 F.3d 725, 730 (7th Cir. 2013). "Evidence supporting or opposing summary judgment must be admissible if offered at trial, except that affidavits, depositions, and other written forms of testimony can substitute for live testimony." *Malin v. Hospira, Inc.*, No. 13-2433, 2014 WL 3896175 at*1 (7th Cir. Aug. 7, 2014).

## **DISCUSSION**

Aguilera claims that his dismissal violated his rights to procedural and substantive due process, and unlawfully retaliated against him for engaging in protected speech. The Court finds that the Board has demonstrated that no genuine dispute of material fact exists and that the Board

is entitled to judgment as a matter of law because Aguilera will not be able to support any of his claims.

A. **Procedural Due Process**

In order to benefit from the protection of the Due Process Clause of the Fourteenth Amendment, a plaintiff must make an initial showing that he or she was "deprived of a constitutionally protected interest in life, liberty, or property." *Belcher v. Norton*, 497 F.3d 742, 750 (7th Cir. 2007). "[I]n any due process case where the deprivation of property is alleged, the threshold question is whether a protected property interest actually exists." *Cole v. Milwaukee Area Technical College Dist.*, 634 F.3d 901, 904 (7th Cir. 2011). Procedural due process protects a person's continued public employment only if that person has "a legitimate claim of entitlement" to that continued employment. *Id.* (quoting *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972)). State law, not the Constitution, must create the legitimate claim of entitlement to continued employment. *See Cole*, 634 F.3d at 904 (citing *Roth*, 408 U.S. at 577). Therefore, the terms of the public employee's appointment determine whether a constitutionally protected property right exists. *Cole*, 634 F.3d at 904 (quoting *Roth*, 408 U.S. at 578). Under Illinois law, "[t]o show a legitimate expectation of continued employment, a plaintiff must show a specific ordinance, state law, contract or understanding limiting the ability of the state or state entity to discharge him." *Rujawitz v. Martin*, 561 F.3d 685, 688 (7th Cir. 2009) (quoting *Moss v. Martin*, 473 F.3d 694, 700 (7th Cir. 2007)). Illinois law carries a presumption that employment is at-will, and thus not entitled to due process protection. *Id*.

The parties do not dispute that Aguilera was a non-tenured, probationary appointed teacher. In the complaint itself, Aguilera claims that the Bronzeville's principal could recommend termination "if the principal was 'not satisfied' with his performance." (Dkt. 1 ¶ 23).

5

Indeed, Aguilera's job title was explicitly "probationary." Aguilera has failed to present any evidence that the Board's ability to discharge him was limited in any way. The Board's Employee Discipline and Due Process Policy, which the parties agree governed Aguilera's employment, prescribed procedures for disciplining non-tenured teachers. (*See* Dkt. No. 49 Ex. D). Implying that the Policy's discharge procedures create a protected property right, Aguilera suggests that his discharge was inconsistent with those procedures and therefore violated his constitutional right to due process. The Policy, however, is explicitly not an employment contract. (*Id.* at 5). A policy manual with a clear contractual disclaimer is not "an ordinance, a state law, [or] an express employment agreement" that would create a protected property interest. *Rujawitz*, 561 F.3d at 688. Rather, the disciplinary policy is a "procedural guarantee" which, "whether relied on or not, [does] not establish a property interest protected under the Fourteenth Amendment's Due Process Clause." *Id.* Because Aguilera has not produced any evidence to overcome the presumption in favor of at-will employment, the Court finds that Aguilera had no property interest in continued employment with the Board and his procedural due process claim must therefore fail.

Moreover, the Board did provide Aguilera with process that would likely have been constitutionally adequate if he possessed a property interest in his employment. Due process requires that the government provide an opportunity to be heard before depriving an individual of life, liberty, or property. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985). Had Aguilera demonstrated a legitimate claim on entitlement to his continued employment, the Due Process Clause would require only that the Board provide "oral or written notice of the charges against him, an explanation of the [Board's] evidence, and an opportunity to present his side of the story." *Carmody v. Bd. of Trs. of Univ. of Ill.*, 747 F.3d 470, 475 (7th Cir. 2014)

(quoting *Loudermill*, 470 U.S. at 546). Here, the Board satisfied each of these conditions. Thus, even if Aguilera had a property right to his employment, Aguilera's procedural due process claim would likely fail.

The Board is therefore entitled to summary judgment on Aguilera's claim that his dismissal violated procedural due process.

**B.     Substantive Due Process**

The "scope of substantive due process is very limited." *Belcher v. Norton*, 497 F.3d 742, 753 (7th Cir. 2007). Substantive due process protects "against governmental interference with certain fundamental rights and liberty interests." *Hayden ex rel. A.H. v. Greensburg Cmty. Sch. Corp.*, 743 F.3d 569, 575 (7th Cir. 2014) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997)). Fundamental rights are "those which are deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Id.* Public "employment-related rights are not fundamental; an alleged wrongful termination of public employment is not actionable as a violation of substantive due process unless the employee also alleges the defendants violated some other constitutional right or that state remedies were inadequate." *Palka v. Shelton*, 623 F.3d 447, 453 (7th Cir. 2010). If no fundamental right is at stake, a plaintiff must show that public officials abused their power with behavior that "shocks the conscience" in order to establish a substantive due process violation. *Geinosky v. City of Chi¸* 675 F.3d 743, 750 (7th Cir. 2012) (citing *Rochin v. California*, 342 U.S. 165, 172 (1952)).

As noted above, Aguilera has failed to establish that he had any protected property interest in his employment. Thus, his substantive due process claim must fail, as a protected property right is a necessary predicate of such a challenge. *See Veterans Legal Defense Fund v.*

7

*Schwartz*, 330 F.3d 937, 941 (7th Cir. 2003); *see also New Burnham Prairie Homes, Inc. v. Village of Burnham*, 910 F.2d 1474, 1479 (7th Cir. 1990) ("Before a party may assert a due process argument – procedural or substantive – it must establish that it has a 'legitimate claim of entitlement' to the right being asserted."). Even if Aguilera did possess a property interest in his employment, the Board would be entitled to judgment in its favor. Aguilera's complaint alleges only that the Board's decision to terminate him was "arbitrary and capricious" and that he has suffered damages as a result of the termination. The complaint contains no allegation of additional constitutional violations, that state remedies were inadequate, or that the Board's behavior shocked the conscience. Aguilera's submissions in opposition to the Board's summary judgment motion neither mention nor present evidence relevant to any of these requirements. Aguilera has therefore failed to state an actionable substantive due process claim or refute the Board's claim that no genuine disputes of material fact exist with respect to these elements.

The Board is therefore entitled to summary judgment on Aguilera's claim that his dismissal violated substantive due process.

### C. First Amendment Retaliation

To succeed on a First Amendment retaliation claim, a public employment must demonstrate "(1) that she engaged in constitutionally protected speech; (2) she suffered a deprivation because of her employer's action; and (3) her protected speech was a but-for cause of the employer's action." *Diadenko v. Folino*, 741 F.3d 751, 755 (7th Cir. 2013). The burden of establishing causation is "divided between the parties." *See Surita v. Hyde*, 665 F.3d 860, 874 (7th Cir. 2011). First, the plaintiff must demonstrate that the protected speech was a motivating factor, or sufficient condition, of the dismissal. *See Greene v. Doruff*, 660 F.3d 975, 978 (7th Cir. 2011) ("A 'motivating factor,' as the term is used in the cases, is a sufficient condition, but never

a necessary one[.]"). Next, the defendant must show that it would have taken the same action whether or not the plaintiff had engaged in the speech, in other words that the speech was not a necessary condition or but-for cause, of the dismissal. *Id.* at 979. This burden shifting approach reflects the notion that the Constitution is "sufficiently vindicated if such an employee is placed in no worse a position than if he had not engaged in the [protected] conduct." *Id.* (quoting *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 285-86 (1977)).

Aguilera's relevant speech was constitutionally protected. In his response to the Board's motion for summary judgment, Aguilera clarifies that the speech on which he bases his retaliation claim is his novel and explicitly not his discussion of the book with students while he was a public employee that gives rise to his retaliation claim. (Dkt. No. 60 at 10) ("Plaintiff is not claiming that he had a right to talk about his book to his class"). There is no dispute that Aguilera wrote *Gabriel's Fire* years before he was a public employee. Neither the Board, nor this Court, has any quarrel with the notion that the First Amendment permits private citizens to compose literary works on any subject they choose.

Aguilera cannot establish, however, that that speech "was at least a motivating factor" in the Board's decision making process. *Diadenko*, 741 F.3d at 756. A motivating factor means a condition sufficient to cause the Board to terminate Aguilera's employment. *See Greene*, 660 F.3d at 978. This cannot be the case. The Board was aware of *Gabriel's Fire* when it hired Aguilera. Were the content of the book a condition sufficient for Aguilera's discharge, he could neither have been hired nor could he have worked at Bronzeville. Notwithstanding the logical impossibility of his position, the evidence does not support the claim that the content of the novel was a motivating factor in his dismissal. Aguilera cites deposition testimony concerning *Gabriel's Fire* by those responsible for his discharge, arguing that the Board's employees'

9

disdain for its content caused his termination. All of the cited statements are ambiguous. While the Court is obligated to make reasonable inferences in Aguilera's favor as the non-moving party, the Court cannot conclude that these statements would allow a reasonable jury to infer that the content of the book was a sufficient condition for Aguilera's dismissal. Rather, the deposition testimony supports only the inference that the Board had become uncomfortable with the fact that Aguilera discussed his book and encouraged his students to read it, an activity Aguilera concedes he had no right to do. (Dkt. 60 at 10). Thus, Aguilera has not carried his initial burden of demonstrating that the book was a sufficient condition for his termination.

Nevertheless, even if *Gabriel's Fire* were a motivating factor in the Board's decision, Aguilera's retaliation claim would fail because "another dramatic and perhaps abrasive incident also influenced" the Board's decision. *See Diadenko*, 741 F.3d at 756 (quoting *Mt. Healthy*, 429 U.S. at 285-86). Had Aguilera carried his initial burden, the Board would have to prove that *Gabriel's Fire* was not a necessary condition of Aguilera's termination. *Greene*, 660 F.3d at 979. The findings contained in Mahaffey's investigation memorandum are sufficient to demonstrate that the Board would have taken the same action against Aguilera regardless of the existence of the book. While it is unlikely that the content of the book garnered any sympathy in those responsible for Aguilera's termination, it likewise was not necessary to the Board's decision to terminate. Aguilera had been found to have an inappropriate relationship with a female student. Specifically, the Board found that Aguilera stated that he wanted to marry a student, gave her gifts, invited her to sit with him alone in his car, sent her at least one good-night text message, and allowed the student to read love letters from an ex-girlfriend. While the Board also found that Aguilera encouraged the student to read his book, nothing suggests that this singular finding was necessary to its decision to terminate him. The Board's proffered reasons for terminating

Aguilera establish that Aguilera's authorship of *Gabriel's Fire* was not a necessary condition of his termination.

Aguilera likewise cannot show that the Board's justification for his termination was pretext. A plaintiff can establish pretext either directly, with evidence demonstrating that "retaliation was the most likely motive for terminating him," or indirectly, by demonstrating that the defendant's "proffered justifications were not worthy of credence." *Vukadinovich v. Bd. of Sch. Trs. of N. Newton Sch. Corp.*, 278 F.3d 693, 699 (7th Cir. 2002). In simple terms, Aguilera must demonstrate that the Board's justification for his dismissal "is a lie." *Zellner v. Herrick*, 639 F.3d 371, 379 (7th Cir. 2011). Here, Aguilera encounters the same problem he encountered meeting his initial burden: the Board was aware that the book existed when the Board hired him and during the beginning of his employment. The Board did not fire or discipline Aguilera, despite the fact that it was well aware the book existed and in fact added the book to the Bronzeville library. It strains credulity to suggest that the Board hired Aguilera with knowledge of the book, added the book to its library, and then fired Aguilera because of the book, but not because of his inappropriate relationship with a female student.

The Board is therefore entitled to summary judgment on Aguilera's claim that his dismissal was in retaliation for speech protected by the First Amendment.

## CONCLUSION

For the reasons stated herein, the Board's motion for summary judgment is granted.

United States District Court Judge
Northern District of Illinois

Date: September 29, 2014